First case is Zagaryan v. Ashcroft. Counsel? Good morning. May it please the Court, my name is Jade Mundell. I'm with the Law Offices of Markson-Ackland in Los Angeles, California. And I represent the Petitioner in this matter. I would like to first say that if I can, reserve one to two minutes for rebuttal or whatever time I have remaining. With regard to this instant case, the Petitioner was seeking relief in the form of asylum, withholding, and relief under CAT, a convention against torture. The immigration judge denied his applications for relief, and the Board of Immigrations affirmed without opinion. The main issue in this matter is whether an adverse credibility finding is supported by substantial evidence of record. On behalf of Petitioner, we assert that certain errors occurred and that the substantial The immigration judge in his oral decision mentions that, and government counsel also mentions in their brief, that the recourse that Petitioner had with the opportunity to contact the Prime Minister of Armenia when he had the complaint, that when he was working on the construction site for the police chief, that this was a viable avenue of recourse that he could have gone to the Prime Minister. The only reason he knew about that was because he had talked to his father, his father had mentioned it to him, he had explained the persecution he was experiencing, the beatings he was experiencing. It seems a very unlikely possibility that this particular person in a small town who was on a construction site working for the chief of police, being beaten by them, would necessarily presume that he had the real opportunity to contact the Prime Minister of Armenia to assist him in helping him with this. We consider that an unlikely, an unrealistic theory. When he mentioned it, that he was possibly considering doing this to the supervisor of the site and the police that were coming to his house to take him for beatings, they took recourse upon him, and the ramifications were that he was additionally beaten and he was sent off to a very difficult area of war in the Gorno-Karabakh region of Armenia. How soon after this did he assassinate the Prime Minister? I don't know. I'm not sure, Your Honor, I'm sorry. I saw something in the record about the Prime Minister being assassinated, but it seemed it was shortly after he said he was going to, or shortly after he had asked people who were victims of corruption to report the corruption. Well, the documents in the record also show there are documents, human rights documents, that are admitted in the evidence in the record that basically recount that given the problems with the police, the lack of transparency, to quote, and the difficulties that a lot of police challenges either go unreported or the equivalent of a slap on the wrist when they are, and it would be the equivalent of me having my father say to me that he heard President Bush was doing something about harassment in the workplace or harassment on the work site and me thinking that I'm going to contact him and he's going to help me. There's a lot of corruption in Armenia. It seemed like a ridiculous premise for them to assume that he had a real recourse through the Prime Minister to help this person. I thought in reading this that one of his basis of persecution was that after he said he was going to contact the Prime Minister that he was conscripted into the military and sent into a particularly dangerous war zone. So are you saying he didn't say that or that he said it but it wasn't, I don't understand what you're saying. Whether he said he was going to contact the Prime Minister. I believe he did say that and he basically said it to the supervisor of the construction site who was the police chief for whom the house was being built and they came to him and threatened him at the certified administrative record at 84. That's when he told them, his father told him, he was going to, and he told the supervisor he was going to report them and they said if you do this you're going to have worse problems. So they immediately increased the level of threat to the petitioner and they followed through on it. So I think when he says I didn't have time or I didn't have the opportunity to go to the Prime Minister, I think it's a combination of I was terrified and pretty soon after that I had physical ramifications because I even threatened it let alone did it. But I also think the concept is so sophisticated which also leads me to talk about some of the other inconsistencies. Well, suppose we were to find that, suppose we were to agree with you on the credibility question, what issues would remain that we would be required to remand under Ventura to the BIA? Well, I mean, from our position we think that the record stands that the decision actually should be reversed. But if it were to be remanded, I think there are issues that, taking his testimony as true, has he proven or have there been findings on disputed questions of facts such that he would be entitled to just a remand for consideration of his eligibility for asylum? Do you mean do the facts of the issue rise to the level that it would be worthy of a remand? Well, did the IJ, for example, make the further findings on whether or not this rose to the level of persecution and whether or not it was based on imputed political opinion? He did make the finding that it was based on an imputed political opinion. But I don't believe that he necessarily addressed whether the issues, whether the incidents reported rose to the level because of the negative credibility finding. I don't think he touched on that. But is that a legal question or is that, at this point, if you took his testimony as true, is that a legal question that we could decide? Well, if the issue is looking at the record to see if the credibility is substantially supported by the evidence, then I think that it could support a decision by this Court by looking at the facts and record and reversing or remanding based upon that. I think the facts of the issue definitely rise to the level of asylum and possibly are very likely to the level of withholding and relief under Convention Against Torture. So I believe strongly that the Petitioner's facts as stated, even with the inconsistencies of the dates, were all in 1999. He was just off on his months. The facts rise to the level of asylum. So the issue here was a credibility finding. So if the credibility wasn't substantiated, I believe it was a legal issue. I don't want to take too much of your time on this because you wanted to deal with the other inconsistencies. But is the question really whether the record compels a finding of persecution or whether the fact that the Board didn't reach that issue requires a remand? Well, because the Board issued its decision without affirmance, the Court then looks to the underlying record at the merits hearing. So I think if we bypass the Board's position, which was to just affirm without opinion, then this Court looks to the record, and the record shows facts and evidence that if he is found credible, if he's determined credible, rise to the level of asylum. So it would have to either require a reverse or a remand. Okay. What about you wanted to deal with the other inconsistencies? The other inconsistencies, and I appeal to the Court to cite Arulampalam, which is founded, cited at 353 Federal 3rd, 679. It was decided by this Court December 19th, 2003. In that case, there was a slight distinction without, I think, significant difference in that the immigration judge there decided his case, negative credibility, not based on inconsistencies, but based on the demeanor. However, this Court's analysis of the issues involved with cultural insensitivity and a lack of understanding by the immigration judge of this particular Petitioner in Arulampalam, his background, his provincial knowledge of things, it was not taken into account. And I find that analogous in this situation. The immigration judge in government refers to the term sexual assault. It was not within the understanding of the incident Petitioner to even understand what sexual assault meant. All of the dates in issue, he admits to having a faulty memory with regards to dates, but he got all of the details right. And akin to Arulampalam, he basically got his story right, but there was a divide between the understanding of the immigration judge and the background and limited education to articulate clearly. Can you tell me how to spell Arulampalam? Yes. Or can you give me a citation or a case number? It's A-R-U-L-A-M as in Mary, P-A-L-A-M as in Mary. And it's cited at 353 Federal 3rd, 679. I practiced saying it for today. 659? Yes. 679. Sorry. Thank you. But the immigration judge there talks about or this Court talks about how the immigration judge expected a high level of linear thinking, and that is akin to our Petitioner here. He is a provincial day laborer with a lack of education who was trying to articulate his position, and I think the bar was set so high for a sophisticated level of understanding and articulation that the reasoning that the Court applied in Arulampalam should apply as well in control with regard to our Petitioner, that he got the gist of his story correct. He was consistent. He said the police were bothering him. He talked about the persecution experienced by the government, and any inconsistencies or perceptions on the part of the judge or the government to assume otherwise seemed de minimis. All right. Thank you, counsel. Thank you. Thank you. May it please the Court. My name is Victor Lawrence and I represent the Attorney General. This Court should deny this petition for review in this case where the immigration judge issued two separate, distinct, dispositive findings in one order, each of which were supported by substantial evidence. The immigration judge found that even if Mr. Zagarian was credible, fully credible, he failed to satisfy his burden of proof in establishing past persecution that the Iranian government was unwilling or unable to control. And the petitioner – Now, which are you talking about? Are you saying that they said that this didn't constitute persecution or that he didn't establish that the government was unable or unwilling to control? The latter, Your Honor. The latter, okay. Page 35 of the record is the portion of the immigration judge's decision in which he states that. It's the second full paragraph where he starts out by saying there are two problems with the Respondent's case, the Respondent at that point being Mr. Zagarian. And this petitioner failed to challenge that finding before this Court. He has waived the issue. There is a dispositive finding made by the immigration judge that the petitioner has failed to challenge for substantial evidence. Accordingly – I don't quite understand this decision. He said he has not shown that he did not have recourse against the alleged police brutes through a complaint to the Prime Minister. Are you really saying that everybody who complains that he's harassed by the police or by – in any country that the police beat him has an obligation to go to the Prime Minister or the President? Well, Your Honor, here in the petitioner's own testimony, he stated that he was aware of this avenue because the Prime Minister told the people that everybody who sees corruption should report it to his office. And the petitioner said he wanted to do that. Sounds like most politicians. You really think everybody in the country has to go to the Prime Minister? Well, Your Honor, this is a situation where the petitioner himself stated that he was going to do it, and his father suggested he do it, and he just never did. But the – Well, the question is, does he have an obligation to in order to exhaust some kind of remedies, which seems to be the theory. It's true that, I mean, somebody may consider going to George Bush. And that's quite right. You know, you may even say, I'm going to go to George Bush and get this solved. Good luck. But I don't think we'd say you failed to exhaust your remedies if you didn't do it. Even if George Bush said he was deeply concerned about corruption. I respectfully disagree with the analogy between comparing somebody bringing a complaint to George Bush and somebody bringing a complaint to the Prime Minister of Armenia, which is a much smaller country. How many people in Armenia? It's far less than the 250 million in the United States. I don't have an exact statistics for it. Well, let's talk about California, then. If somebody doesn't go to Arnold Schwarzenegger, the police beat you, and you don't – and Governor Schwarzenegger says, it's fantastic. You know, I think we have a wonderful system here. I'm not going to let anything happen to anybody in California. Your Honor, I understand your point that somebody could look at these facts and believe that it's far-fetched that somebody has this opportunity to contact the Prime Minister. However, when the Petitioner fails to even challenge the finding of the immigration judge, he has waived the argument. And the dispositive finding of the immigration judge stands. And even if this Court were to believe that the adverse credibility finding was not supported by substantial evidence, there is that separate, distinct, dispositive finding listed at page 35 of the record in the immigration judge's opinion, in which he clearly states that the Respondent has not shown that the government was unwilling or unable to protect him from the renegade police officers. So I respectfully submit that that is a dispositive finding that was not challenged by the Petitioner. Accordingly, for that reason alone, this Court may deny and should deny this petition. But even if you get past the waiver issue and you look into substantial evidence, the alternative finding of the immigration judge was that significant inconsistencies and omissions from the Petitioner's story, as told during his asylum application and as told later in his oral testimony, that go directly to the heart of his claim, support an adverse credibility finding. And this Petitioner has had the opportunity on several occasions to try to credibly satisfy his burden of proof. He had the opportunity before an INS asylum officer. He had the opportunity in several hearings before an immigration judge. He also had the opportunity to bring his facts to try to show a credible burden of proof to the Board of Immigration Appeals. And each of those bodies did not find that he had credibly satisfied his burden of proof. I know, but we wouldn't be here otherwise. In every case we have, it's because at the other levels, the government has ruled against the person. So it doesn't really add much to the argument to say he's appealing to a court, which is what that leads to. I understand. But when this Court looks at the reviews of this case, it looks for substantial evidence. Accordingly, as you mentioned earlier, this Court should not reverse. If it gets to the adverse credibility issue, if it gets past the waiver issue, it should not reverse this case under the substantial evidence standard unless it feels that any reasonable adjudicator would be compelled to conclude to the contrary. And we submit that this Petitioner has not shown facts that would compel any reasonable adjudicator to come to the different conclusion that the immigration judge came to here. Let me ask you the question Judge Wardlaw asked opposing counsel. If the Court concluded, A, that the first issue is not waived, B, that the credibility finding is not supported by substantial evidence, is this the kind of a case where we would simply reverse, or is there an issue left on which we are compelled by Ventura to remand? Well, there are only two issues, and that's the waiver issue and adverse credibility issue. So if the Court finds that it's not supported by substantial evidence under Ventura, it should remand for consideration of that issue. Of which issue? For the reasons that you suggest, that it's not supported by substantial evidence. Perhaps your conclusion might be, and I would disagree. No, no, no, no. I said if we concluded that it's not supported by substantial evidence, the credibility finding is erroneous and we reversed it, does that mean that we reverse the ultimate determination that he's not eligible for asylum? Or must we remand, are there other remaining issues for the Board to decide before determining eligibility? And that's where I was trying to go, Your Honor, is perhaps you might determine that the reason it's not supported is because you're not satisfied that the immigration judge has shown specific and cogent reasons for finding an adverse credibility  If we did get another chance, what we would do is remand and say, taking the testimony as true, he made a finding that it was political, and then if his testimony is true, there's case law that describes what rises to the level of persecution, so you don't need to remand for that. So that's my question. So you've got an enumerated ground, rise to the level, if you believe his testimony, so what else is there? No, you pointed out in your response there, and I apologize, I didn't catch on to it sooner, but the idea is, yes, you would have to remand to determine whether it does rise to the level of persecution because that was not decided. But isn't that a legal question? I mean, if you take these facts as true, and you apply the law to those facts, isn't that a legal question? And all Ventura said is you need to remand if the, they talked about the BIA, and BIA really didn't do anything here, but if the BIA had not made a factual finding on the issue, that there was some factual issue left to be decided by the agency, then you would It's created some confusion. But this is a discretionary issue for the agency to decide. Ultimately, if you meet all the elements of asylum, and a court says in the merit law I met all the elements, it's ultimately discretionary with the agency whether to actually grant asylum. Is that correct? Right, it's within the attorney general's discretion, yes. So it would need to be remanded for that purpose. No, no, we're assuming that. The issue that Judge Wardlaw is trying to explore is whether you can make a determination of eligibility for asylum once we resolve the credibility question, or whether, as she explained it, either the one issue that's not clearly resolved if we resolve credibility, it's not resolved by the IJ's opinion explicitly, is whether it rises to the level of persecution. And the question is, if it is apparent from the law and the precedent that it does rise to that level, then may we just send it back for the exercise of discretionary power, or should we still send it back and say that the IJ has to first determine whether it does do what we all know, rise to the level of persecution? I think that it would, under Ventura, it would need to be sent back to the BIA to determine that. But I stress that, given the waiver issue and that Petitioner failed to challenge a dispositive finding of the immigration judge, on that issue alone, this Court should deny the petition. That finding remains, regardless of what this Court feels about the adverse credibility it's in. The finding you're referring to, is this one about recourse to the Prime Minister? That relates to persecution by the government or a group that the government was unwilling or unable to control? Absolutely. We have the police, too, and his cohorts. Which the petitioners that describe these people as renegade police officers. There's no evidence that the government was unwilling or unable to control these people. The evidence refutes that. The evidence is that the Prime Minister said that he wanted to stop all corruption and to bring complaints to him. Now, I understand completely how somebody might disagree with that and feel that that may be far-fetched, but that's not the standard. The standard is whether that's supported by substantial evidence. How can something both be far-fetched and be supported by substantial evidence? Well, I want to get back again. They never challenged the findings. So first we have to get past that issue, that they never challenged the immigration judge's finding on that. But does this issue with the Prime Minister compel a reasonable jury pair to conclude to the contrary? Does this issue that somebody could bring a complaint to the Prime Minister, well, we don't even know anything about it. We don't even know how far-fetched it is. In the United States, it may be far-fetched to say that President Bush is going to do something if anybody gets beat up by a police officer. But we do know. We have the State Department reports. We have a lot of reports about what's going on in Armenia. And that's in the record. Right, but there's nothing in those reports that suggests that they're unwilling or unwilling to do anything. And that's what's at issue in this case. But, you know, here the immigration judge made a finding, and it wasn't challenged. They've waived it. And it's a response to the finding. I don't mean to say that. While we're talking about technical matters, taking advantage of things like somebody doesn't address an argument or doesn't comply with the rules, the brief copy of the doesn't contain a table of cases or a list of issues, table of contents, table of authorities. Is that a correct copy of your brief? Well, Your Honor, I did not write this particular brief. That's okay. The United States government wrote it. No, I understand. And I noticed the same thing in my copy. And I perhaps falsely assumed that perhaps I was the only one that didn't have that. Well, do you suppose it would be appropriate to strike the brief for not complying with the rules, and then maybe you've waived everything? We could certainly, you know, look at waiver in that light. Well, Your Honor, with all due respect, the normal thing that would happen in that situation is the clerk would advise us that there's a brief deficiency. Well, the clerk didn't advise you, and that happens. And we now have an argument, and now we have a brief. And maybe we shouldn't consider it if we're so worried about waiver. But I respectfully request that you not take that position. It could do. I mean, if you read the rule, if you don't comply, we could have struck it at any point. We didn't. We haven't yet. We haven't yet. With all due respect, I would say that it's more serious that somebody does not take a dispositive appeal than it is that we accidentally, apparently. Well, if we were just trying to do justice, we'd probably overlook both. But since we don't do that in the courts and we just apply rules, it doesn't matter whether they make any sense, these rules that we have to apply, you know, whether it's more serious or less serious, we could take that kind of a rigid rule-like attitude about the issues. But all right. I think. Mr. Warren, you say that the Petitioner failed to raise this issue of unable or unwilling to control a renegade police. I think you would say that he did not raise that in his appeal to the BIA. Is that correct? Well, actually, not, Your Honor, respectfully. In the appeal to the BIA, one could arguably argue that he did raise the issue to the BIA. It's in the last paragraph of their appeal, and it's not really clear. But I'm not taking that position. I'm taking the position he didn't raise it to the court of appeals. In this court. That's correct. Now, you raise it in your red brief, an argument. Yes. And it's then responded to and argued in the gray brief because they respond particularly to that issue. But apparently it's not set forth as an issue in the blue brief, in the opening brief. But we would have authority to address issues that have been fully argued to this court, even though they were not raised in the opening brief. That's really the issue, is what should we address this issue when there was a failure to raise it in the opening brief. That's the issue, isn't it? That is the issue, yes. Okay. And I would submit, though, that even in the reply, it wasn't fully raised. The reply also went to the credibility issue and may have mentioned in one sentence, which wasn't even under the heading of sorts. I'm sorry. But have you read pages 6 to 7 of this brief? It's where they mention the issue, as you raised in Respondent's brief, and says the Respondent states the Petitioner did not dispute this dispositive finding and thus raised the issue. And then they say Petitioner does dispute this finding. And it's argued at page 8. Right. But it goes right down, disagreeing with your assertion that there was no unwilling Petitioner inability by the government to do so. But the idea is that, and this Court has held, that it should be raised in the opening brief, because that way I would have had an opportunity. But we also have exceptions to that, that in the interest of justice, that we consider arguments. You didn't exactly identify it as an issue because you didn't provide a statement of issues in the red brief. But you argued it anyway. No, no, no. The issue is the issues are in the red brief.  The immigration judge's dispositive finding that he failed to establish persecution, which the government was unwilling or unable to control. That's right there on page 2 of our brief. So the idea is, and this Court has so held, is that we are entitled to an opportunity to respond to any arguments that are raised in the opening brief. They did not raise that argument in their opening brief, that the immigration judge's decision regarding that finding was not supported by dispositive by supported by substantial evidence. They didn't raise that. So we didn't have an opportunity to attack it, except here today. Let me take you one step further. Suppose we were to conclude that we would address the issue on appeal. And we look at this record and we say, well, substantial evidence does not support the finding that the government was not. Let's see. The finding was the government was willing or able. We'll say that he did present credible evidence that the government was unwilling or unable to protect him from the renegade police. Now, that would mean that that issue, if we were to remand the IJ, that that issue had been resolved that he had presented substantial evidence to show that they were unwilling or at least unable. But that would then leave open still, I think, the question of whether the actual treatment that he received was sufficient to entitle him to asylum, even crediting his testimony. And this gets to the question of can we decide this on appeal or must we remand? Well, again, I think you have to remand. The other issue, and I apologize I didn't say this sooner as well, is whether or not he has a reasonable fear of persecution in the future. That's something that was the immigration judge here only looked towards past persecution and found a lot of inconsistencies between his asylum application and asylum testimony and stopped there. There was no need to discuss whether or not there's a reasonable fear of persecution in the future. So there, again, would be a need to remand. Even if the government involvement issue goes his way? Yes. He was involved in this past meeting, but does he have a reasonable fear of future persecution as the government rebutted the presumption from past persecution? Right. We never got that far in the first opinion. So for that reason, it would need to be remanded. But, again, it's our position that it must be denied. I understand. You looked like you had another question. I think that's an issue. I think it's another open issue whether we've had this issue in criminal law as well, sentencing, whether if you're looking at this record and you decide that the adverse credibility decision is wrong and it supports a finding of past persecution and the government didn't anywhere in the record, even though there's a lot of documents and country reports and everything put in any evidence that would rebut it, whether we should remand to give the government another chance to do what it should have done in the first place. I don't know. I think that's another open question under Ventura. They've left a lot of things open under Ventura, and that's why I'm exploring it with you. Respectfully, I – Do you have a case that says something on that, that the government should be given a chance now to do something that it should have done in the first place? Well, it's more the idea that the immigration judge didn't address that part, and we need to know the immigration judge's views of whether or not he thinks that the presumption, NA presumption, is rebutted. Excuse me, but you're not – I mean, we're going way over time, but no, because the immigration judge hears the case. The government doesn't know or shouldn't know or shouldn't, you know, be so sure that the immigration judge is going to make an adverse credibility finding that it doesn't put in the record its case. I mean, how do you know at that point in time when it's submitted to the IJ, before he's rendered his opinion, that that's the ground he's going to go on? I mean, so I would – you know, as a trial lawyer, I would think you put in your case and you put in your best case, and then you don't know which ground the judge or the jury might – That's true, but, you know, here the immigration judge – I understand your point. The government put in their evidence, and the immigration judge said, well, I don't find past persecution, and the reason why is because he found an adverse credibility determination. He also found that the government was unwilling or unable to – that that was a finding as well, that he didn't establish persecution. But to the credibility issue, you know, he stopped there because he didn't have to go further. So if we want to know whether – He stopped there, but the government didn't know that. So why did the government – what reason do we have from this record to believe the government didn't put in its whole case? And I'm just wondering, do you have any cases that have really addressed that issue? Not off the top of my head, no. All right. But I never got a chance to explain why I believe these omissions and inconsistencies go to the heart of his claim. And, I mean, I think the grossest one is in his – Well, pick one, and we'll have to do it quickly, because I think you're double over time by now. Well, I think the strongest that was supported in the record is the idea that he completely jumbles the order of events that occurs when he states it in his asylum application and then in his oral testimony. In his written application, he states that he left the construction site in September 1999, and then the police came and they took him away into the Army. That's at page 219 of the record. In his oral testimony, he states that he left the construction site in February 1999, and then he's forcibly taken back to the construction site to do more work. Well, which is it? I mean, the seven-month issue, I understand. I still think that's a significant inconsistency. But also, what happened to you next? Were you drafted into the Armory, or were you taken back to the construction site and beaten further? And he's inconsistent with the number of beatings he has. He doesn't discuss the sexual assault that occurred with his supervisor. And this grave digging incident, I think, is quite severe. He's saying that he was forced to lie in a grave without food and water for two days. This is in his application. He'd lie in a grave for two days without food and water and to urinate and defecate on himself during that time. And he doesn't even mention that in his asylum testimony. That is a significant inconsistency and omission. He merely mentions, after being prompted several times, that they forced me to dig a grave, or maybe he said dig my own grave. That's it. You know, it would be helpful, it seems to me in these cases, if somebody says something in his original application, he comes in and he doesn't testify to it. He may not know that he has to testify about everything that happened. He may think the most important things he has mentioned. And it would help if somebody would then say to him, well, here are some other things you said. What's the story about these things? Well, here in this case, I mean, with respect to the grave digging incident, they asked him, did this happen by your home or by the construction site? Because that was a discrepancy as well. Where did this incident occur? And the testimony is different in each regard. But why didn't the I.J. or somebody say to him, all right, so you dug the gravesite, and then what? What happened with respect to the gravesite? If he said that's all, then you'd have an inconsistency. But after he reported that he dug the gravesite, nobody said to him, did you get in it? How long were you there? What happened? So they just went on to other incidents. And this happens all the time. Nobody explores. The first place, as you may have noticed, immigration lawyers are not always the most thorough people in developing a record. And sometimes you don't even have an immigration lawyer. Well, this person was represented by counsel. Well, you get records like this where the government comes in later and says there's an inconsistency. But nobody asks at the hearing. The government doesn't say to the witness, you don't even have to say, well, here's an inconsistency. Explain it. All you have to do is say, did anything further happen? And if he says, no, that's it, then you've established something. But if you don't ask him about it, they assume that that's all I have to tell you about that. Well, one could also assume that when somebody is represented by counsel and the immigration lawyer, that the immigration lawyer advises his client that, hey, when you go in and describe these events, you have to be thorough, specific, and detailed because you have the burden of proof of proving asylum. And that attorney has a responsibility, and for all we know, that's exactly what happened. But they pick the things that they think are the most important. I think that what's really important is that the army came and took him, that he was beaten up, and that the army took him and sent him off to this Turkish zone. That might not be the judgment that others would make about which are the most serious incidents. But he was obviously having difficulty conveying the story anyway, and the immigration judge was a little bit impatient with the way he was answering questions. So the government may think another incident should have been explored fully. You may think that he's explored the ones that are really the most important. It's so easy to solve the problem by just asking him or inquiring. Your Honor, I concede that on that particular issue with the grave digging, it would have been nice if there was a follow-up question. But the idea is that this is a huge part of his application. Of all the incidents that he mentions, you know, a couple beatings, and then I was forced to lie in my own grave for two days and urinate and defecate on myself, and that doesn't even come up. So here the immigration judge pointed out these discrepancies and significant omissions, didn't mention the sexual assault where the supervisor allegedly takes his head off his groin and makes a derogatory comment. Doesn't mention that. It's mentioned in the application. But the immigration judge reasonably concluded that these are significant inconsistencies and omissions between his application and his hearing testimony, and as a result he found as one of his dispositive findings that there was an adverse credibility determination. And based on that, this Court reviews that just for substantial evidence. It might disagree. It might say, well, I disagree that that's a significant inconsistency, but would you be compelled to conclude to the contrary? And we submit that you should not be. Well, that's another issue because the asylum application is part of the record, right? Yes. Right. So if it's part of the record, then when he's testifying and he simply omits greater detail or something from the asylum application, why isn't it just as reasonable to conclude that he's assuming it's part of the record and that you've got it, you've got it in front of you? Why can't it be used to support the application? Because it's a significant omission. So what does the hearing become? A test if he can remember everything that was in the asylum application? It's not a test, but it's his chance to prove his burden that he was persecuted and deserves asylum. As a practical matter these days, you know that the IJs are not giving very much time, and they're limiting testimony and cutting off testimony. So why isn't it reasonable to assume if you put it in evidence in another way that shouldn't be part of the support for your claim instead of, you know, making it a trap for your claim? Well, because this Court's precedent is that if there are significant omissions, you're getting at omissions as opposed to inconsistencies because he omitted from his testimony. He didn't omit the fact of it. He just didn't go into the detail. Well, the detail is what's important. Being forced to dig a grave isn't persecution, or at least I don't consider that persecution to being forced to dig a grave. What could be considered persecution is being forced to lie in it while you're still alive and being deprived of food and water and being forced to urinate and defecate on yourself. That I can understand how somebody could reasonably conclude that's persecution. But he didn't testify to that. It's in his asylum application. But this Court has stated that when there are significant omissions which go to the heart of his claim, as this clearly does, that can support an adverse credibility determination and will withstand appellate review. Okay. I think we've got to come to an end, no matter how happy and experienced this is. We've got to come to an end sometime, and this is it. Thank you, Your Honor. Thank you. Case to argue. Oh, no. Rebuttal. Yes, yes. Forgot about you. Come on. It's been so long since we saw you. Okay. Let me go through these as quickly as I can. You're aware of the old adage that cases can seldomly be over-tried, but they can often be over-argued. You're aware of that. I will keep that in mind. Number one, the Respondent pretty much undermines its own position in stating that with regard to Petitioner's own testimony not having credibility. When it wants to derive something from Petitioner's credibility or testimony to support the government's position, it does so. And when it doesn't want to, when it wants to oppose something that the Petitioner said, then it did not find credibility. The example I'm going to give is Respondent's brief at page 15. In one sentence, the government says, the record only established that Zagarian was harassed and beaten by the supervisor of a private construction company whose connection with the Armenian government was, at best, unclear. In the very next sentence, the government says, moreover, the record clearly establishes that the government was willing to protect Zagarian from such private corruption and that Zagarian failed to avail himself of that protection. Well, I don't think that the government can both claim that the record is unclear and clear when we're only referring to Petitioner's testimony. Second, they said that one of the strongest things had to do with one of the strongest issues involved with the inconsistencies was he got the order of events wrong. I think this also goes to the case I cited before, Arulambulam versus Ashcroft, that the government there talks about linear thinking. This Court notes in its appraisal on page 687 of that case of the Petitioner's conduct and manner of speech that basically that a level of linear thinking was expected of him that he was incapable of providing. And I think that's the same thing with this particular Petitioner, that a level of articulation and sophisticated concepts was beyond his realm of communicating clearly under the pressure of being in court. From what I understand, I wasn't there, but he was drinking water, he was very visibly upset, he was trying to communicate as best as he could. Number three, the grave digging incident, there were many times when this Petitioner was overly responsive and both government counsel and the Petitioner's own attorney, which was former counsel, had to reel him back in and focus his attention. At no point did the attorney for Petitioner state, was there anything you dug? Did anybody give you a shovel and ask you to do anything? There was no prompting. They just, he said a couple of times, did anything else happen around that period of time? The sexual assault and some of the other things that the immigration judge deemed to go to the core of this case, I think they need to put themselves, the government needs to put themselves in the position of this particular Petitioner. You take your Petitioner as you find him, to paraphrase, that he did not even deem as soon as the government heard there was a groin involved, this thing became a sexual assault. If the Petitioner's face had been shoved in the dirt, he would have construed it to have the same significance for the most part. They were both humiliating, awful experiences, but he didn't have the wherewithal to deem it sexual assault. As soon as it became termed that, that term of art came into play, then this began to be the focus of the crux of his experience. Finally, in the interest of justice, I think it should be mentioned that this case has changed hands many times. I was not the attorney that wrote the opening brief on this. I certainly would hope that in the interest of justice that this Court would consider, not assuming that this very significant issue of whether the government was unwilling or unable to help the Petitioner would be considered waived. Not every attorney who's represented this Petitioner has possibly advised him zealously and appropriately. He didn't even know that he needed the name of the person so that he could establish the chain of command for the letters which were not considered admissible. So I would ask for the Court's consideration on that. And as final regard, I do believe that the facts in this case rise to the level of asylum and also withholding and relief under convention against torture. And if the substantial evidence supports that the credibility finding should be reversed, then I think it's very possible that a decision could be reversed here as well overall, but certainly would take a remand in the alternative. Thank you. All right. Thank you, Counsel. Thank you both very much. The case just argued will be submitted. Fortunately, so will the next two immigration cases. So we'll end up where we should have been anyway. Next case for oral argument is the ones that are submitted are Satsurian and Patitanian. And now we're down to Rabinowitz versus Paul Revere. It's nice to come to Rabinowitz.
judges: Reinhardt, Thompson, Wardlaw